THE TRAVELERS INSURANCE COMPANY v. THOMPSON.

4-4460

Opinion delivered December 14, 1936.

*Armstrong, McCadden, Allen, Braden & Goodman* and *G. B. Oliver, Jr.,* for appellant.

*Malcolm W. Gannaway* and *William D. Hopson,* for appellee.

MEHAFFY, J. On November 1, 1929, the appellant issued to the appellee its accident policy, which contained the following clauses:

"Or, if such injuries independently and exclusively of all other causes shall wholly and continuously disable the insured from the date of the accident from engaging in any occupation or employment for wage or profit, the company will pay, so long as the insured lives and suffers such total disability, monthly indemnity at the rate hereinbefore specified.

"Or, if such injuries independently and exclusively of all other causes, shall wholly and continuously disable the insured from the date of accident from performing

one or more important daily duties pertaining to his occupation, or for like continuous disability following total loss of time, the company will pay for the period of such disability, but not exceeding eight consecutive months, a monthly indemnity of one-half of the amount payable for total disability.''

Appellee, who was forty-three years old, had been working for the Louisville & Nashville Railroad Company at Louisville, Kentucky, continuously from January, 1916, until December, 1929. During all that time he carried a policy with the appellant, but changed it to a straight accident policy in 1929. On March 3, 1935, appellee filed suit in the circuit court of Clay county alleging that he was injured on December 25, 1929, through accident, and as a result of the injury he was totally and permanently disabled from that date; that he gave notice to the company within twenty days, and complied with all the conditions precedent to recovery.

Appellant filed a motion to require the appellee to make his complaint more definite by stating whether the notice was forwarded to appellant's office in Hartford or to an authorized agent of appellant, and that he be required to state the manner in which the notice was given and to furnish the name of the persons to whom notice was given.

Appellees filed an amendment to his complaint alleging that within a few days after his injuries he wrote a letter to the authorized agent of appellant in Louisville, Kentucky, advising the agent, whose name he did not remember, of his injury, the manner in which it was sustained, and that he furnished him with sufficient particulars to identify him as the insured. On the date of trial appellee filed a further amendment alleging that in addition to the letter written to appellant's agent in Louisville, he also mailed a card within the twenty-day period to appellant's home office advising them of his injuries.

The appellant then filed answer denying that appellee received any accidental injuries, and denying that he gave notice in twenty days either to the agent at Louisville or to the home office. Appellant alleged that the first

notice it had of appellee's alleged injury was on August 27, 1934. It pleaded failure to give notice as a defense. It also alleged that appellee's disability was not continuous beginning on the date of the accident, as contracted in the policy.

There was a jury trial, and a verdict and judgment for $2,400, plus $300 attorney's fees, and 12 per cent. penalty, amounting to $288. The verdict and judgment aggregated $2,988. The case is here on appeal.

The appellee testified, after introducing the policy, that he was a brakeman on the railroad and earned from $190 to $300 per month; on the evening of December 25, 1929, he was scheduled to make a run to Ravena; he went on duty at 7:20 p. m. to get his train prepared for the run, and while he was fixing his lights preparing to go out, a yard engine cut the caboose off, kicked it off on an empty track; as the engine came back for the caboose, appellee was standing close to the end, inside, at the oil box. They hit the car hard, knocked appellee against the end of the caboose; he was knocked unconscious; there were several men in the caboose when appellee regained consciousness; he was hurt, bruised all over, and sick at the stomach; called the company doctor, but could not get him at that time; went back to Louisville on the morning of the 27th and went to see Dr. Baker; was suffering with his head and shoulder, mostly with the head; had severe headaches, was dizzy, and Doctor Baker gave him some medicine, but his headaches and dizziness got worse; he was off and on his work until 1931; did not do anything these trips, just filled the vacancy; they had a full crew law, and he just went over the railroad filling in the crew; sometimes when he was called he could not go out; none of his associates knew his condition was as bad as it was, except the conductor; if they had, he could not have worked; the conductor knew his condition, would let him come on the caboose when he knew he could not work, and would do his work for him; his trouble got worse; his right eye pained him a great deal, and he would get down and could not get up for four or five days; a little later he became paralyzed; he first noticed this some time

in the fall, he did not have any taste on his tongue, and he did not notice the paralysis on his face and eye, and his eye was so that he could not close it; that caused him to know that something was wrong; he went to see several physicians, but none of them could help him; got a leave of absence and went to the hospital in Louisville; they were unable there to correct his paralysis, dizzy spells and headaches; his conductor advised him not to go out again; was afraid he would get killed. There never was a time after the accident when he was able to perform the substantial or material duties of a brakeman; he got a ninety-day leave of absence, trying to hold his seniority; notified the insurance company with the card that was in the policy, they had a card in the policy that he was supposed to fill out and mail to the home office, and he did that. The card was printed by the company and sent out to be used in cases of accidents, or if one got sick, to notify the company. He filled it out at home and his wife gave it to the postman at the door; he saw her give it to him.

Ernest Fogelman, the conductor, testified about the accident and about the condition of the appellee, and stated that at times they allowed him to rest and all would do his work for him; he would attempt his work while suffering from intense pain from his condition; he could not have performed his duties satisfactorily without assistance; he should not have had to work at all; his inability to do his work began immediately after his injury, and began to get worse; he worked satisfactorily prior to the accident in December.

A number of other witnesses testified, including the physicians. The physicians introduced by appellee testified in substance that his permanent and total disability they thought was a result of the accident; and the physicians introduced by appellant testified that his condition was from disease. They made several tests, but there is no evidence tending to show that he had a disease which would cause his condition.

Appellant says there are two questions presented by the appeal: First. Did the appellee give notice to appel-

lant of his injury within twenty days thereafter, as required by the accident insurance policy here in controversy? Second. Did appellee, while the policy was in force, become wholly and continuously disabled from the date of accident from engaging in any occupation or employment for wage or profit?

It is earnestly insisted by the appellant that the proof of notice is insufficient, and they call attention to numerous authorities first, *Bluthenthal* v. *Atkinson,* 93 Ark. 252, 124 S. W. 510. In that case the court said that the party had a choice of a number of agencies to make the communication or give the notice, and he chose the mail. The court also said: "Where a letter has been properly mailed, the law raises a presumption that it was duly received by the person to whom it was addressed, but as was said by the Supreme Court of the United States in *Rosenthal* v. *Walker,* 111 U. S. 185, 'the presumption so arising is not a conclusive presumption of law, but a mere inference of fact founded on the probability that the officers of the government will do their duty.' As was declared by our court in *Planters' Ins. Co.* v. *Green,* 72 Ark. 305, 80 S. W. 151; 'the presumption, in the absence of evidence to the contrary, is that it was received, but this presumption may be rebutted.' "

The court in that case also approved the following instruction: "If you find from a preponderance of the evidence that on the 25th day of June, 1908, the plaintiff was residing in Pine Bluff, Arkansas, and that on that day the defendant wrote a letter to plaintiff notifying her of her intention and desire to claim the benefit of his option and renew the lease for another term of five years, inclosed the same in an envelope, addressed it to plaintiff at the city of Pine Bluff, Arkansas, placed thereon the necessary postage stamps and mailed it to her in said city, then the law presumes that it was delivered to her in due course of time, and the burden is on the plaintiff to show by a preponderance of the evidence that she did not receive it."

Appellant next calls attention to the case of *Runyan* v. *Community Fund of Little Rock,* 182 Ark. 441, 31 S. W.

(2d) 743. We think the facts in that case are so wholly different from the facts in the present case that it has no bearing whatever on this case.

Appellant calls attention to numerous other authorities, but it may be stated as the rule adopted by this court, that, in giving notice by mail, it is necessary to show that the letter was properly directed, stamped and mailed. This, however, does not have to be shown by direct testimony, but may be shown by circumstantial evidence.

The rule is stated in C. J., Vol. 22, page 99, as follows: "In order to support a presumption of receipt of a letter, there must be satisfactory proof that it was duly mailed, although such proof need not consist of direct and positive testimony to the ultimate fact of mailing. A letter deposited in a postoffice, a government street letter box, a mail box on a rural delivery route, or a mail chute shown to be connected with a government letter box, or delivered to an official letter carrier while on his official route, or to a United States mail agent while on duty on a mail train, is duly mailed."

The evidence in this case shows that the card mailed to the company was a printed card sent out with the policy for the purpose of being mailed to the company in case of accidents; that this card was delivered to the mail carrier in the presence of appellee.

This court said in *Southern Engine & Boiler Works* v. *Vaughan*, 98 Ark. 388, 135 S. W. 913, Ann. Cas. 1912D, 1062: "The rule is well settled that if a letter is properly mailed it is presumed that it reached the party to whom it was addressed, and was received by him in due course of mail." The court also said in this case: "The word 'mailed,' when applied to a letter, means that it was properly prepared for transmission in the due course of mail, and that it was placed in the custody of the officer charged with the duty of forwarding the mail. When, therefore, the witness testified that this letter had been mailed to the plaintiff, it was sufficient evidence that it had been properly directed, stamped and delivered to the officials of the postal department for proper transmission through the mails;

and from this the presumption arose that the plaintiff, to whom the same was addressed, received it. This presumption could be rebutted by testimony that it was not in fact received, but the positive denial by plaintiff that same was received would not be sufficient, as a matter of law, to nullify the presumption of its receipt. Such testimony simply left the question as to the receipt of the letter for the determination of the jury under all the testimony adduced at the trial.''

We think the above case settles the question as to notice in the instant case.

It is next contended that the appellee, while the policy was in force, did not become wholly and continuously disabled from the date of the accident from engaging in any occupation or employment for wage or profit. The evidence shows that the appellee was seriously injured and that while he tried to work for some time afterwards, we think the undisputed proof shows that he was not able to perform his work.

Total disability is generally regarded as a relative matter, which depends largely on the occupation and employment in which the party insured is engaged. Provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business, do not require that he should be absolutely helpless, but such disability is meant which renders him unable to perform all the substantial and material acts of his business, or the execution of them in the usual and customary way. *Ætna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310; *Missouri State Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. (2d) 600; *Mutual Benefit Health & Accident Ass'n* v. *Bird,* 185 Ark. 445, 47 S. W. (2d) 812.

There are numerous other cases decided by this court to the same effect. We think the evidence was sufficient for the jury to find that the appellee was totally disabled from the time of the accident. It is true, he tried to work thereafter, but he was unable to perform his duties, and this is shown by the undisputed evidence.

There is evidence of physicians to the effect that appellee's condition is not the result of the accident, but

340

the result of disease. However, the extent of appellee's disability and the cause of it were questions of fact for the jury, and its verdict is conclusive here.

We find no error, and the judgment of the circuit court is, therefore, affirmed.